UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-62281-CIV-COHN/SELTZER

ORIOLE GARDENS CONDOMINIUM
ASSOCIATION I,

    Petitioner,

vs.

ASPEN SPECIALTY INSURANCE
COMPANY,

    Respondent.
_____/

## ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Respondent's Motion for Partial Summary Judgment [DE 59]. The Court has carefully considered the motion and related filings and is otherwise fully advised in the premises.

**I.    Background**[1]

This case involves a dispute between Petitioner Oriole Gardens Condominium Association I ("OGCA") and its property-insurance carrier, Respondent Aspen Specialty Insurance Company ("Aspen"), concerning a supplemental claim filed by OGCA for property damage allegedly caused by Hurricane Wilma on October 24, 2005. On March 8, 2006, OGCA's president executed a Sworn Statement in Proof of Loss under OGCA's policy with Aspen, claiming actual-cash-value ("ACV") benefits of

---

[1] Petitioner's response to Respondent's motion does not include the statement of material facts required by Local Rule 56.1(a). Consequently, all material facts recited by Respondent and supported by evidence of record are deemed admitted. See S.D. Fla. L.R. 56.1(b).

$306,789.48.² See DE 59-1 at 1.  In a related sworn statement, OGCA agreed that any supplemental claim for replacement-cost coverage (representing depreciation of the covered property) would not exceed $297,928.76.  See DE 59-3 at 1.  OGCA further agreed that, pursuant to the terms of the policy, any such supplemental claim would be filed within 180 days from the October 24, 2005, date of loss.  See id.  On March 13, 2006, Aspen issued a check to OGCA for $306,789.48 to settle the ACV claim, and OGCA accepted that check unconditionally.  See DE 59-4 at 1, 3.

OGCA did not file a supplemental replacement-cost claim within the required 180-day period.  On February 15, 2007, Aspen wrote to OGCA to inquire whether it would be submitting a replacement-cost claim.  See DE 59-5 at 1.  Aspen noted that in order to qualify for replacement-cost coverage, OGCA must complete the repairs and document expenditures exceeding the sum of the deductible and the ACV amount paid by Aspen (totaling approximately $1.6 million).  See id.  Aspen indicated that it would consider for payment any amount spent by OGCA in excess of that sum, up to the previously agreed limit of $297,928.76.  See id.  Aspen further stated, however, that if it did not hear back from OGCA within 30 days, Aspen would conclude that no replacement-cost claim was forthcoming and would close its file on the matter.  See id.  OGCA did not submit a replacement-cost claim within 30 days of Aspen's letter, and Aspen closed its file.

Nearly three years later, on December 15, 2009, Able Adjusting, Inc. ("Able"), notified Aspen that OGCA had retained Able in connection with OGCA's Hurricane

---

² The claim documents reflect that OGCA's ACV loss was $1,621,897.86, but that amount was reduced by a deductible of $1,315,108.38.

Wilma claim and that OGCA "intend[ed] to complete repairs and file a supplemental claim for any recoverable depreciation withheld." DE 59-6 at 1.  On June 30, 2010, OGCA submitted a new Sworn Statement in Proof of Loss claiming $19,095,797.27—more than 60 times the amount of its original claim.³  See DE 59-13 at 1.  After repeatedly requesting repair invoices and other documents to substantiate OGCA's new claim, Aspen ultimately denied that claim on August 26, 2011.  See DE 59-8.

On August 31, 2011, OGCA filed a Petition for Declaratory Relief in state court, seeking a determination that its property-damage claim arising from Hurricane Wilma was covered under its policy with Aspen.⁴  See DE 1-2.  On October 24, 2011, Aspen removed the action to federal court based on diversity jurisdiction.  See DE 1.  During the litigation, an expert retained by OGCA prepared a report estimating that the ACV of OGCA's property damage was $3,399,632.97 and that the applicable depreciation was $592,857.84, yielding a total replacement-cost value of $3,992,490.81.  See DE 64-2 at 1 (Summary of Opinions).⁵  On May 18, 2012, Aspen filed its present Motion for Partial Summary Judgment.  See DE 59.

---

³ OGCA's new claim, which excluded the deductible amount, was based on Able's repair estimate of $20,410,905.65.  See DE 59-14 at 2.  By comparison, OGCA's original claim represented that the actual cash value of the *entire property* was $28,184,000.00.  See DE 59-1 at 1.

⁴ As the Court previously recognized, this action presents only the issue of coverage under the policy.  See DE 21 at 3-4.  If coverage is established, then OGCA's amount of loss would be determined in a separate appraisal process.  See id.

⁵ The expert's report also provided a separate estimate that included "uniformity," i.e., replacement of undamaged property to match the replaced damaged property.  See id.

## II. Discussion

### A. Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must point out to the Court that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.

4

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker, 911 F.2d at 1577.  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).

The Court's function at the summary-judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  In making this determination, the Court must discern which issues are material:  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248. Moreover, in deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  See Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

**B.    Respondent's Arguments**

Aspen moves for summary judgment on several grounds, arguing that OGCA's supplemental claim under its policy with Aspen is barred by the terms of policy and the parties' settlement of the original claim.[6]  OGCA opposes Aspen's motion and maintains that the various elements of its supplemental claim are covered by the policy.

---

[6] Although OGCA's Petition for Declaratory Relief is not expressly limited to the supplemental claim, there is no dispute that OGCA's original claim was covered by the Aspen policy.  Indeed, Aspen paid that claim in full.  The Court therefore construes OGCA's Petition as seeking a declaration that the supplemental claim, which Aspen denied, is covered by the policy.

5

The parties agree that this diversity action is governed by the substantive law of Florida.  See Great Am. E&S Ins. Co. v. Sadiki, 170 F. App'x 632, 633 (11th Cir. 2006) (per curiam) (affirming district court's holding that "Florida's choice of law rules mandate the application of Florida law to a dispute over a contract to insure real property located within the state").  Florida law requires that insurance contracts be interpreted "according to their plain meaning" and that any ambiguities be construed "against the insurer and in favor of coverage."  Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005).  When a policy provision is "clear and unambiguous," it must be "enforced according to its terms whether it is a basic policy provision or an exclusionary provision."  Id. (internal quotation marks omitted).

1.  **ACV Claim**

Based on the parties' settlement of OGCA's original ACV claim, Aspen contends that OGCA's supplemental claim for ACV benefits is barred by accord and satisfaction. "An accord and satisfaction results when: (1) the parties mutually intend to effect a settlement of an existing dispute by entering into a superseding agreement; and (2) there is actual performance in accordance with the new agreement.  Compliance with the new agreement discharges the prior obligations."  Martinez v. S. Bayshore Tower, L.L.L.P., 979 So. 2d 1023, 1024 (Fla. 3d DCA 2008) (per curiam).  For example, when one party tenders a check and another party accepts the payment with the intent to settle an existing obligation, the tendering party's liability on that claim is discharged by accord and satisfaction.  See id.  "[S]trong public policy supports the use of accord and satisfaction" because it is "a convenient and valuable tool for resolving disputes informally without litigation."  Id.

Here, in sworn claim documents executed by its president, Abe Rosen, OGCA agreed in March 2006 that the total amount of its ACV claim arising from the Hurricane Wilma damage was $306,789.48.[7] To settle that claim, Aspen issued a check to OGCA for the full claim amount of $306,789.48, which OGCA accepted unconditionally.[8] These facts establish that the parties intended Aspen's payment to satisfy its liability for the ACV element of OGCA's property-damage claim. Therefore, OGCA's present claim for ACV benefits— brought years after its original claim was settled—is foreclosed by accord and satisfaction. See United Prop. & Cas. Ins. Co. v. Valladares, 73 So. 3d 310, 311-12 (Fla. 3d DCA 2011) (holding that insured parties' unconditional acceptance of insurer's payment to settle property-damage claim barred later action seeking additional payments relating to that claim).

### 2. Replacement Cost Claim

Next, Aspen asserts that OGCA may not recover replacement-cost benefits under the policy because OGCA has not satisfied the policy's requirements for replacement-cost coverage. The relevant provisions of the policy state as follows:

> c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional [Replacement Cost]

---

[7] OGCA argues that Rosen "merely signed a form that was provided to him by Aspen" and that he "was not represented by either an attorney or a public adjuster at the time of the original claim." DE 64 at 11. But OGCA does not dispute that, as its president, Rosen was fully authorized to handle the claim on OGCA's behalf. See DE 64-3 at 2, ¶ 7 (Affidavit of Abe Rosen) ("As President, I was Oriole Gardens' representative in connection with this insurance claim.").

[8] The only issue reserved by the parties' agreement was OGCA's possible filing of a supplemental replacement-cost claim. See DE 59-3 at 1.

7

>> Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.
>
> d. We will not pay on a replacement cost basis for any loss or damage:
>
>> (1) Until the lost or damaged property is actually repaired or replaced; and
>>
>> (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

DE 64-1 at 22.

Aspen first maintains that OGCA did not timely notify Aspen of its intent to make a supplemental replacement-cost claim, in violation of the policy and the parties' agreement concerning the original claim.[9] It is undisputed that OGCA did not notify Aspen of a replacement-cost claim within 180 days of the date of loss, i.e., by late April 2006. And even if Aspen's February 2007 follow-up letter could be construed as an offer to extend this deadline, OGCA did not respond within the 30-day period allowed by the letter. Indeed, the first notice that Aspen received of a supplemental replacement-cost claim was the correspondence from Able on December 15, 2009—more than *four years* after the date of loss. This untimely notice, which OGCA does not contest in its response, bars the replacement-cost claim here. See <u>Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.</u>, 674 F. Supp. 2d 1333, 1343 (S.D. Fla. 2009) (granting summary judgment to insurer on claim for replacement-cost coverage because insured failed to comply with policy's "clear and unambiguous language" requiring notice of claim within 180 days of loss).

---

[9] In addition, Aspen notes that OGCA seeks replacement-cost benefits in excess of the limit previously agreed upon by the parties.

Aspen also contends that OGCA's replacement-cost claim fails because OGCA has not repaired or replaced most of the allegedly damaged property, even though six and a half years have passed since the date of loss.[10]  In response, OGCA concedes that its "entire claim consists of items that have not been repaired and/or replaced" and that "it is not entitled, at this time, to recover the Replacement Cost Value of the items that are damaged, but unrepaired."  DE 64 at 3.  Still, according to OGCA, "this does not mean that Petitioner is never entitled to recover the withheld depreciation," since "[t]here is no specific time requirement for Petitioner to complete the work and recover the full Replacement Cost Value of the claimed damages."  Id.  This argument ignores that OGCA is *currently* suing for replacement-cost benefits yet admittedly has not met the policy's clear requirement that OGCA first repair or replace the damaged property.  See Buckley Towers Condo., Inc. v. QBE Ins. Corp., 395 F. App'x 659, 662-64 (11th Cir. 2010) (reversing jury award of replacement-cost damages to insured because it had not repaired or replaced damaged property as required by policy).  OGCA argues, however, that it has not repaired or replaced the damaged property because "Aspen has refused to tender the Actual Cash Value of the damages which would have provided Oriole Gardens with the financial ability to perform the work."  DE 64 at 3.  But as already discussed, Aspen has satisfied its liability for ACV benefits by paying OGCA's original claim in full.  In any event, the Eleventh Circuit in Buckley rejected an identical "prevention of performance" argument because it would "impermissibly rewrite the insurance contract."  395 F. App'x at 663.

---

[10]  Additionally, Aspen notes that the repairs OGCA has made do not exceed the threshold value required for coverage under the policy, namely, the deductible plus the earlier ACV payment.

For all these reasons, the record shows conclusively that OGCA has not satisfied the policy's prerequisites for obtaining replacement-cost coverage. Aspen is therefore entitled to summary judgment on OGCA's claim for replacement-cost benefits.[11]

### 3. Increased Costs of Construction

Last, Aspen argues that OCGA may not recover the increased costs of construction resulting from compliance with an ordinance or law. Two sections of the policy appear to provide separate coverage for such costs. See DE 64-1 at 12-13, 42-43. But as with replacement-cost coverage, the policy makes clear that an insured must first repair or replace the damaged property before seeking benefits for increased costs of construction. See id. at 13, 42-43. Further, any such repair or replacement generally must be completed within two years. See id. at 13, 43. As discussed above, OGCA concedes that it has not repaired or replaced the property that is the subject of this lawsuit, even though the alleged damage occurred several years ago. Therefore, to the extent that OGCA seeks recovery of increased construction costs, the Court grants summary judgment to Aspen on that claim.

## III. Conclusion

Based on the undisputed facts, the Court concludes that Petitioner's claims are not covered under its policy with Respondent and therefore that Respondent is entitled to summary judgment in this action seeking a declaration of coverage. See Fed. R. Civ. P. 56(a). Accordingly, it is **ORDERED AND ADJUDGED** as follows:

---

[11] In view of this ruling, the Court need not consider Aspen's argument that OGCA may not recover the cost of replacing undamaged property based on a theory of "matching" or "uniformity." See DE 64-1 at 9 (policy provision limiting coverage to "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss").

1. Respondent's Motion for Partial Summary Judgment [DE 59] is hereby **GRANTED**;

2. Petitioner's separately filed Motion for Partial Summary Judgment [DE 61], which addresses certain affirmative defenses pleaded by Respondent, is hereby **DENIED as moot**;

3. The parties' Motions in Limine [DE 67–69, 71–78] are hereby **DENIED as moot**;

4. The calendar call scheduled for July 26, 2012, is hereby **CANCELLED**, and the case is removed from the Court's July 30, 2012, trial calendar; and

5. The Court will enter a separate Final Judgment in this action.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 11th day of July, 2012.

JAMES I. COHN
United States District Judge

Copies to:

Counsel of record via CM/ECF